**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| NOAH FOWLER,<br>Plaintiff,<br>v.<br>GWINNETT COUNTY, GEORGIA, *et al.*,<br>Defendants. | Civil Action No.<br>1:25-cv-05311-SDG |

**OPINION AND ORDER**

This case is before the Court on motions to dismiss filed by Defendants Gwinnett County, Georgia; Jacob Altman; and Brian Doan [ECFs 15, 16]. Because Plaintiff Noah Fowler fails to plausibly allege that any Defendant violated his Fourth or Fourteenth Amendment rights, and Altman and Doan are entitled to official immunity as to Fowler's state law claims, Defendants' motions are **GRANTED**. Fowler's first amended complaint is **DISMISSED**, and he is granted leave to file a second amended complaint consistent with this Order within 30 days.

## I. BACKGROUND[1]

At the time of the events alleged in the complaint, Fowler was a sworn officer of the Lawrenceville (Georgia) Police Department (LPD).[2] Altman and Doan are officers of the Gwinnett County Police Department (GCPD), which is operated by Defendant Gwinnett County.[3] Altman is a K-9[4] handler, and Doan is his supervisor.[5]

On March 9, 2024, Fowler was on duty when he came upon a suspicious person riding a bicycle on West Pike Street in Lawrenceville.[6] When Fowler attempted to stop the bicyclist, the bicyclist jumped down an embankment and fled the scene.[7] Because no K-9 units from LPD were available to assist, Fowler

---

1 At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).

2 ECF 9, ¶ 4.

3 *Id.* ¶¶ 5–7.

4 The term "K-9" (a homophone of canine) refers to a dog specifically trained to assist members of law enforcement. *See* National Police Dog Foundation, *About K-9s*, https://www.nationalpolicedogfoundation.org/about-k9s [https://perma.cc/G8P7-AFZ9] (last visited Sept. 25, 2026).

5 ECF 9, ¶¶ 6–7.

6 *Id.* ¶ 9.

7 *Id.*

requested K-9 assistance from GCPD.[8] Altman responded with his K-9, Mako, along with Doan and other officers.[9]

Altman and Mako began tracking the suspect, with Altman keeping Mako on a 30-foot leash.[10] It was dark outside, and Fowler was wearing a black uniform, while Altman and Doan were wearing green uniforms.[11] Fowler followed Altman down the embankment, at which point Doan warned Fowler that Mako might attack him if he was not wearing green.[12] Several other LPD and GCPD officers walked over the suspect's trail, contaminating Mako's attempted tracking.[13]

The officers did not locate the suspect.[14] Instead, Mako attacked Fowler, biting him and dragging him to the ground.[15] Fowler suffered puncture wounds to his thigh and required emergency treatment, which led to permanent scarring

---

8 *Id.* ¶ 10.

9 *Id.* ¶¶ 11–12.

10 *Id.* ¶ 11.

11 *Id.* ¶ 12.

12 *Id.* ¶ 13.

13 *Id.* ¶ 14.

14 *Id.* ¶ 15.

15 *Id.* ¶¶ 15, 17.

and ongoing pain.[16] According to the complaint, neither Altman nor Doan examined Fowler's injury or called for medical aid, in violation of GCPD policy.[17]

Conversations among the GCPD K-9 officers suggest that this was not the first accidental bite incident involving Mako.[18] Records obtained from GCPD indicate that Mako had one previous accidental bite incident, though Altman's discovery responses suggest that Mako had three previous incidents, and Altman may not have disclosed a training incident in which Mako bit Altman.[19]

Fowler initially filed his complaint in Gwinnett County State Court in July 2025 and then amended his complaint in August to include claims under federal law.[20] Defendants removed the case in September and filed motions to dismiss.[21] Fowler amended his complaint again, and the Court denied Defendants' motions to dismiss as moot.[22] Defendants then filed motions to dismiss the operative complaint, which are now ripe for resolution.[23]

---

16 *Id.* ¶ 19.

17 *Id.* ¶ 20.

18 *Id.* ¶¶ 24–26.

19 *Id.* ¶¶ 33–34, 38–39.

20 ECF 1-1, at 3, 55.

21 ECFs 1, 4, 5.

22 ECFs 9, 14.

23 ECFs 15, 16.

## II. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). A complaint is plausible on its face when the plaintiff pleads facts sufficient for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The principle that the Court must accept all

well-pleaded facts as true at this stage does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Fowler's operative complaint brings ten counts against Defendants: (I) a Fourth Amendment excessive force claim against Altman and Doan pursuant to 42 U.S.C. § 1983; (II) a failure to intervene claim against Doan pursuant to § 1983, arising out of the alleged Fourth Amendment violation; (III) a Fourth Amendment supervisory liability claim against Doan pursuant to § 1983; (IV) a Fourth Amendment municipal liability claim against the County pursuant to § 1983; (V) a First Amendment retaliation claim against the County pursuant to § 1983; (VI) a state law negligence claim against Altman and Doan; (VII) a state law negligent hiring, training, and retention claim against Doan; (VIII) a state law negligent training and supervision claim against the County; (IX) a vicious or dangerous animal liability claim against all Defendants pursuant to O.C.G.A. § 51-2-7; and (X) a Fourteenth Amendment substantive due process claim against all Defendants pursuant to § 1983. Defendants move to dismiss on various grounds, including failure to state a claim, state law sovereign and official immunity, and federal law qualified immunity.

In response, Fowler withdrew his First Amendment and state law claims against the County as well as his O.C.G.A. § 51-2-7 claim against Altman and

Doan.[24] That leaves Fowler's Fourth and Fourteenth Amendment claims against Altman and Doan (including the related supervisory and municipal liability claims against Doan and the County) and the state law negligence claims against Altman and Doan. Because Fowler fails to plausibly allege that he was seized within the meaning of the Fourth Amendment, or that Altman and Doan's use of Mako (despite his record of previous accidental bites) in the pursuit of the suspect was arbitrary or conscience-shocking in violation of Fourteenth Amendment substantive due process, his § 1983 claims are dismissed. As to his state law claims, because Fowler fails to plausibly allege that Altman and Doan exercised their discretion to deploy Mako with the deliberate intent to injure him, they are entitled to official immunity, and his state law claims are dismissed.

### A. Section 1983 Claims

Fowler brings § 1983 claims against all Defendants based on their respective alleged roles in the biting incident: Altman and Doan for deploying Mako in the pursuit; Doan for failing to intervene or adequately supervise Altman as the supervising officer; and the County for maintaining policies permitting the use of Mako and failing to adequately train and supervise its officers in their use of allegedly dangerous K-9s. Each such claim requires that there be an underlying constitutional violation. *See Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009)

---

[24] ECF 18, at 2; ECF 19, at 3.

("[B]ecause [the defendant officer] did not use excessive force, [the co-defendant officer] had no obligation to intervene."); *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation."); *Coley-Pearson v. Martin*, 156 F.4th 1133, 1147 (11th Cir. 2025) (quoting *Heller*, 475 U.S. at 799) ("[A] governmental entity cannot be held liable 'based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm.'"). Because Fowler fails to plausibly allege an underlying Fourth or Fourteenth Amendment violation, he fails to state any § 1983 claims.

**1. Section 1983 Principles**

Section 1983 creates no substantive rights. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Id.* To succeed on his claims, Fowler "must prove that [ ]he was deprived of a constitutionally guaranteed right under color of state law." *Tillman v. Coley*, 886 F.2d 317, 319 (11th Cir. 1989).

In § 1983 cases, the Court begins by "identifying the specific constitutional right[s] allegedly infringed." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140 (noting "[t]he first inquiry in any § 1983 suit" is "to isolate the precise

constitutional violation with which [the defendant] is charged”). In this case, Fowler alleges two constitutional violations: (1) the right to be free from unreasonable seizure and excessive force under the Fourth Amendment; and (2) the right to be free from excessive force under the Fourteenth Amendment’s substantive due process component. Both claims arise from the same conduct: Altman and Doan’s deployment of Mako to track a suspect, during which Mako bit Fowler.

### 2. Excessive Force under the Fourth Amendment

“The Fourth Amendment’s freedom from unreasonable searches and seizures encompasses the right to be free from excessive force during the course of a criminal apprehension.” *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009). To state a Fourth Amendment excessive force claim, Fowler must plausibly allege “(1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable.” *Corbitt v. Vickers*, 929 F.3d 1304, 1315 (11th Cir. 2019) (quoting *Troupe v. Sarasota Cnty.*, 419 F.3d 1160, 1166 (11th Cir. 2005)).

Here, Fowler does not plausibly allege that a seizure occurred within the meaning of the Fourth Amendment. “[A] seizure occurs ‘only when there is a governmental termination of freedom of movement *through means intentionally applied*.’” *Vaughan v. Cox*, 343 F.3d 1323, 1328 (11th Cir. 2003) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989)) (emphasis in original). However, “[i]t is not

necessary for the means by which a suspect is seized to conform exactly to the means intended by the officer," but rather "it is enough 'that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result.'" *Id.* at 1329 (quoting *Brower*, 489 U.S. at 598–99); *see also Corbitt*, 929 F.3d at 1318 ("Lower court decisions construing *Brower* have required, in order to state a violation of Fourth Amendment rights, that the officer's action must have been intended to stop the plaintiff, the party suing the officer.").[25] To illustrate, "innocent bystanders or hostages accidentally harmed by police fire" are not seized within the meaning of the Fourth Amendment, but a suspect fleeing in the passenger seat of a vehicle hit with a bullet intended for the driver may be. *Vaughan*, 343 F.3d at 1328 n.4, 1329.

Fowler's complaint acknowledges that he was not the suspect being tracked by Altman, Doan, and Mako. Fowler does not allege that Altman and Doan intentionally sought to terminate his freedom of movement by engaging Mako. Though Fowler was participating in the same pursuit as Altman, Doan, and Mako, in the context of a Fourth Amendment seizure he was akin to an innocent

---

[25] On this point, Fowler relies extensively on two opinions issued in one case from the Middle District of Florida. *Hope v. Taylor*, No. 8:20-cv-196-T-33AAS, 2020 U.S. Dist. LEXIS 59979 (M.D. Fla. Apr. 3, 2020); *id.*, No. 8:20-cv-196-VMC-AAS, 2021 U.S. Dist. LEXIS 33281 (M.D. Fla. Feb. 23, 2021). However, neither of those opinions address either *Corbitt* or *Vaughan*, and so they are of limited persuasive authority here.

bystander who was accidentally harmed by Mako. Accordingly, he cannot state a Fourth Amendment excessive force claim.

**3. Excessive Force under the Fourteenth Amendment's Substantive Due Process Component**

Fowler alternatively brings a Fourteenth Amendment substantive due process claim based on Mako's bite. "The Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)). "The substantive component of the Due Process Clause 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). As relevant here, substantive due process "is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Lewis*, 523 U.S. at 847 (quoting *Collins*, 503 U.S. at 128).[26] "'Only the most egregious official conduct' qualifies under this standard, so 'even intentional wrongs seldom violate the Due Process Clause.'"

26 The parties all analyze Fowler's substantive due process claim under the guise of executive (and not legislative) action, *see* ECF 18, at 8–9; ECF 19, at 14–16; ECF 20, at 5–7; ECF 21, at 10, and so the Court does as well.

*L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020) (quoting *Waddell*, 329 F.3d at 1305).

Fowler does not allege such egregious conduct here. As stated previously, Fowler does not contend that Altman and Doan intentionally engaged Mako to bite him, but rather argues that they were deliberately indifferent to the substantial risk of using Mako—who was involved in previous accidental bite incidents—during the pursuit. But such a claim is analogous to the one rejected by the Supreme Court in *Collins*. There, the Court held that it was "not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." 503 U.S. at 128. Instead, the Court reasoned that the plaintiff's allegation that the defendant city breached its duty of care to its employee by failing to provide a safe work environment was "analogous to a fairly typical state-law tort claim," and substantive due process "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Id.* (citation omitted). Assuming that Altman and Doan were aware of the risks that Mako posed to bystanders or those wearing black during a nighttime pursuit, but nevertheless chose to deploy Mako, resulting in Mako unintentionally (but perhaps foreseeably) biting Fowler, such a claim is analogous to a fairly typical state law

tort claim. In fact, if Mako were not a police K-9,[27] Fowler's state law tort claim would be governed by a dangerous-animal-liability theory under O.C.G.A. § 51-2-7 or a premises-liability theory under O.C.G.A. § 51-3-1, *Swanson v. Tackling*, 335 Ga. App. 810, 812 (2016), and either way, Fowler would be obligated to "produce evidence of the vicious propensity of the dog in order to show that the owner of the premises had superior knowledge of the danger," *id.* (quoting *Abundant Animal Care, LLC v. Gray*, 316 Ga. App. 193, 195 (2012)). Thus, under *Collins*, Fowler's allegations—that Altman and Doan breached their duty of care to their fellow officer by failing to warn or protect him from Mako's (allegedly) vicious propensity during a police pursuit he requested—cannot be properly characterized as arbitrary or conscience-shocking in the constitutional sense. Accordingly, Fowler fails to state a substantive due process claim.

### B. State Law Claims

Fowler also brings state law negligence claims against Altman for his handling of Mako and Doan for his alleged failure to supervise Altman. Both Defendants move to dismiss on official immunity grounds.

---

27 "O.C.G.A. § 4–8–21(b) provides that '[n]o dog shall be classified as a dangerous dog or vicious dog [for purposes of O.C.G.A. § 51–2–7] for actions that occur while the dog is being used by a law enforcement . . . officer to carry out the law enforcement . . . officer's official duties.'" *Jones v. Fransen*, 857 F.3d 843, 856 n.7 (11th Cir. 2017) (alterations in original).

Under Georgia law, "[t]he doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity." *Cameron v. Lang*, 274 Ga. 122, 123 (2001). Official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." *Id.* The net effect is that a public employee may be personally liable only for: (1) "ministerial acts negligently performed," or (2) "acts performed with malice or an intent to injure." *Id.*; *see also Gilbert v. Richardson*, 264 Ga. 744, 753 (1994) ("[T]he 1991 amendment [to the Georgia Constitution] provides no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure. It, however, does provide immunity for the negligent performance of discretionary acts, which is consistent with prior law.").

The Court's first task is to decide whether Altman and Doan's alleged actions were discretionary or ministerial, as that determines whether the malice or negligence standard applies. A discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Murphy v. Bajjani*, 282 Ga. 197, 199 (2007) (citation omitted). A ministerial act is "one that is simple, absolute, and definite, arising under conditions admitted or

proved to exist, and requiring merely the execution of a specific duty." *Id.* However, a "statutorily-mandated action" is not necessarily "the equivalent of a ministerial act that deprives the actor of official immunity if done negligently." *Id.* Rather, where the mandated action requires the actor to "exercise . . . personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed," the act is a discretionary one. *Id.* at 199–200.

Fowler points to two GCPD K-9 Manual policies as imposing ministerial duties on Altman and Doan, the breach of which caused his injuries: § 9.13.0, which mandates that handlers "inspect wounds, request medical aid, photograph injuries, notify a supervisor, and file a use-of-force report"; and § 9.6.0, which requires evaluation and remediation of accidental bites.[28] However, even assuming *arguendo* that these policies create ministerial duties, and Defendants breached those duties, Fowler does not plausibly allege that these after-the-fact inspection and record-keeping failures caused his injuries.[29]

---

[28] ECF 9, ¶ 35.

[29] While the complaint alleges that Altman and Doan did not examine Fowler's wound or request medical aid immediately after the bite, it also acknowledges that Fowler received emergency hospital treatment. *Compare id.* ¶ 20, *with id.* ¶ 19.

What remains is Altman and Doan's decision to deploy Mako despite Mako's previous accidental bite record, their alleged failure to maintain control of Mako during the pursuit, and Doan's allegedly deficient supervision and training. In *Cameron*, the Georgia Supreme Court held that officers exercise discretion in responding to an emergency call, and in the manner in which they respond to the call. 274 Ga. at 125 (officer exercised discretion in responding to an emergency call by running a stop sign without turning on his police lights, in violation of Georgia traffic law). The Georgia Court of Appeals has also "consistently held that the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial, proprietary, or administratively routine function." *Harvey v. Nichols*, 260 Ga. App. 187, 191 (2003) (collecting cases).

Here, Altman and Doan exercised discretion in responding to Fowler's call for assistance in tracking the suspect, as well as their decision to deploy Mako in the pursuit. Doan also exercised discretion in supervising and training Altman. Therefore, to overcome Altman and Doan's official immunity, Fowler must allege facts suggesting that they acted with malice.

For the purposes of official immunity, "'actual malice' requires a deliberate intention to do wrong," *Wyno v. Lowndes Cnty.*, 305 Ga. 523, 531 (2019) (quoting *Merrow v. Hawkins*, 266 Ga. 390, 391 (1996)), but it "does not include 'implied

malice,' i.e., the reckless disregard for the rights or safety of others." *Id.* (quoting *Murphy*, 282 Ga. at 203). The complaint does not allege facts from which the Court can infer that Altman and Doan acted with a deliberate intention to do wrong against Fowler. Conclusory allegations that they "acted with actual malice and a deliberate intent to cause the harm suffered by" Fowler[30] does not prevent dismissal. *Jaharis*, 297 F.3d at 1188.

Lastly, Fowler argues that dismissal on official immunity grounds would be premature because the analysis requires review of the underlying K-9 policies and factual development regarding Altman and Doan's conduct. Under Georgia law, "official immunity is an entitlement not to stand trial rather than a mere defense to liability, and thus is a threshold issue that must be decided at the earliest practicable opportunity," including on a Rule 12(b)(6) motion to dismiss. *McCloud v. Lowndes Cnty. Bd. of Comm'rs*, 369 Ga. App. 756, 758 (2023) (internal quotation marks and citation omitted). Fowler's complaint acknowledges that GCPD provided him with a copy of its K-9 policy, and Altman and Doan have participated in discovery.[31] Fowler does not plausibly allege the existence of any other ministerial duties that Altman and Doan may have breached (supported by

30 *Id.* ¶ 80.

31 *See, e.g.*, *id.* ¶ 35 (acknowledging that GCPD produced its K-9 Manual via open records request); *id.* ¶ 34 (acknowledging that Altman and Doan responded to discovery requests served in or about July 2025).

evidence or otherwise), nor did Fowler seek discovery regarding any such duties during the pendency of Defendants' motions to dismiss. Accordingly, Fowler's negligence claims against Altman and Doan are dismissed.

### C. Inaccurate Citations

Lastly, Defendants note in their briefing that Fowler's responses to their earlier motions to dismiss contained citations to non-existent opinions. The Court has reviewed these citations, none of which appear to correspond to the cases cited. If Fower intends to pursue this action beyond this Order, the Court will require Fowler to explain these apparent discrepancies.

## IV. CONCLUSION

Defendants' motions to dismiss the first amended complaint [ECFs 15, 16] are **GRANTED**. Fowler is granted leave to file a second amended complaint consistent with this Order within 30 days. Failure to do so will result in dismissal with prejudice. The Clerk of Court is **DIRECTED** to submit this Order to undersigned after 30 days. The Clerk is further **DIRECTED** to administratively close this case.

**SO ORDERED** this 28th day of September, 2026.

Steven D. Grimberg
United States District Judge